**Eddie HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 50015.**

Court of Criminal Appeals of Texas.

June 18, 1975.

Ralph E. Taite, Dallas, for appellant.

Henry Wade, Dist. Atty., Richard W. Wilhelm, Don Driscoll and Jon Sparling, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

Appellant was convicted of murder; punishment was assessed at life imprisonment. Appellant was tried jointly with Cornelius Jackson, whose conviction was affirmed by per curiam opinion in cause number 49858.

Appellant challenges the sufficiency of the evidence to corroborate the testimony of Cornelius Hubbard, the accomplice witness, who made a complete case against appellant and co-defendant Jackson.

The State, in its brief, recites the following facts as sufficient to supply the corroboration required by Article 38.14, Vernon's Ann.C.C.P.:

"First, the evidence showed Exhibit No. 6 was the murder weapon. Secondly, the evidence showed that the appellant was seen in possession of the weapon both prior to and after the crime, ergo: the weapon was his. Thirdly, the evidence showed (although only circumstantially) that the appellant changed barrels to apparently try to avoid ballistics detection. Fourthly, the evidence showed that both prior to and after the crime the appellant lived in the house where the stolen weapons and the murder weapon were found."

The offense was committed on the morning of March 7, 1973. On May 3, 1973, Dallas police officers executed a search warrant on the Curtis Gaines'[1] residence on Lanark Street in Dallas and discovered the murder weapon and two weapons taken from the victim's house at the time of the offense. Several families, including appellant and his wife and child, were living in

---

1. Neither Curtis Gaines nor any of the other residents of the house besides Harris and Jackson were implicated in the murder by the testimony of the accomplice witness Hubbard.

the house where the weapons were seized. Two of the weapons introduced in the case were found in the room occupied by co-defendant Jackson and one was found in Gaines' room. The two in Jackson's room were circumstances tending to connect him to the commission of the offense. None were found in appellant's room. Furthermore, it was stipulated and uncontroverted that appellant was confined in the Dallas County jail at the time of the search and had been so confined for one month preceding the search. In view of appellant's lengthy absence from the premises, the number of other persons residing in the house, and the fact that the weapons were found in rooms not occupied by appellant, but occupied by persons other than him, we are unable to conclude that the fact that appellant had resided in the Gaines' residence constitutes a circumstance tending to connect him with the commission of the offense.

Although the State asserts that the evidence shows circumstantially that appellant exchanged barrels of two weapons in an attempt to avoid ballistics detection, the brief does not reference those portions of the record that would support such an assertion. Our own search of the non-accomplice evidence in the record reveals only that the barrels had in fact been exchanged. It does not show when or by whom the exchange was made.

The only non-accomplice evidence tending to connect appellant to the offense is the testimony that he was seen in possession of the murder weapon some seven months before the offense (by a witness who also testified that the weapon was owned by Gaines, another resident of the house) and testimony that sometime after the offense he was seen in possession of the murder weapon. The issue, then, reduces to this: Is evidence that the accused possessed the murder weapon seven months prior to the offense and at some time after the offense sufficient to tend to connect the accused with the crime as required by Article 38.14, V.A.C.C.P.?

The State has cited no cases which would support an affirmative answer to the question. In Forbes v. State, Tex.Cr. App., 513 S.W.2d 72, and Deal v. State, Tex.Cr.App., 508 S.W.2d 355, cited by the State, there were additional incriminatory facts. In *Forbes* we found:

"The corroborating testimony in the instant case reflects that on the day prior to the killing appellant purchased the weapon with which the fatal shot was fired and also acquired six rounds of .357 Magnum ammunition on that same date, and further reflects that he was in company with the principal Culley within two hours of the killing, later asking a witness to remain silent about the fact she had seen him with Culley on the date in question."

*Deal* presented an even stronger case of corroboration, and also recognized, "the presence of appellant two days after the offense in the house where the death weapons were found by the officers would not alone be sufficient to tend to connect him with the crime. . . ." 508 S.W. 2d, at 357.

A case closer in point is that of Johnson v. State, Tex.Cr.App., 88 S.W.2d 108, cited by appellant, in which the non-accomplice evidence placed the defendant in the company of one identified principal the afternoon and evening of the date of the offense, both before and after its commission, and further proved that the shotgun used in the offense belonged to the defendant. This was held insufficient to corroborate the accomplice witness. The corroboration in the instant case was certainly of much lesser strength than that in *Johnson*, supra. We find it insufficient to tend to connect appellant with the offense committed.

The judgment is reversed and the cause remanded.