NO. 07-05-0054-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 11, 2006


 ______________________________



ANDY JOE SMITH, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 22ND DISTRICT COURT OF COMAL COUNTY;



NO. CR2004-035; HONORABLE CHARLES RAMSAY, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION

 Following a plea of not guilty at his bench trial, appellant Andy Joe Smith was
convicted of burglary of a building and sentenced to one year of confinement. By a single
issue, he contends his conviction should be reversed because the State's accomplice
testimony was not sufficiently corroborated by other evidence tending to connect him to the
offense as required by Article 38.14 of the Code of Criminal Procedure. We affirm.

 After being implicated by an accomplice, appellant was charged with unlawfully
entering Canyon Lake Recreation Center and committing theft. The accomplice, Ryan
Burket, testified that on October 16, 2003, appellant came up with the idea to "rob" the
recreation center. That night, following appellant's directions, Burket drove him to the area
in Burket's father's pickup. The men climbed a fence and approached the building from the
rear. Burket observed appellant throw a rock through a back window and enter the
building. Although appellant offered to give Burket half the money if he came inside, Burket
testified he was too scared to enter the building and stood by the window as a lookout. 
After approximately forty-five minutes, he saw appellant exit the building carrying a plastic
bag and what he later identified as a blue bank bag. The men returned to the pickup where
appellant took cash out of the bank bag and put it in his wallet. The men then drove back
to New Braunfels, where both lived.

 Comal County Sheriff's Deputy David Padula testified that in the early morning hours
of October 17, 2003, he was parked at a convenience store several miles down the road
from the recreation center when he observed a pickup traveling toward New Braunfels with
a defective tail light. He initiated a traffic stop and identified the occupants as Burket and
appellant. When he inquired what they were doing out so late, Burket told the deputy they
had been at a friend's house. (1) During the exchange, the deputy observed a blue bank bag
sitting on the back seat of the pickup which he thought "seemed out of place." He returned
to his patrol vehicle to report their information to dispatch. While sitting in his vehicle, he
observed the two men talking and looking around the interior of the pickup. He
subsequently issued Burket a warning citation for the broken tail light and obtained his
consent to search the pickup. Upon closer inspection, Deputy Padula observed that the
blue bank bag was inscribed with the name of the bank and had a Post-It note with the
words "Front door" taped to its exterior. Burket explained that the truck belonged to his
father and that he was not sure where the bag came from. Unaware that the recreation
center had been burglarized, Deputy Padula released the men.

 Later that morning, employees at the recreation center reported the burglary and
theft of approximately $170 in cash. An investigation revealed that the stolen cash was
kept in several blue bank bags and that the bag labeled "Front door" was missing. The
scene was processed for fingerprints, but no usable prints were found. Deputy Padula
learned of the burglary that evening and related to his superiors how he had observed a
similar bank bag during a traffic stop. A call to a recreation center employee confirmed that
the bag in the backseat of the pickup fit the description of the bag reported stolen. When
a deputy confronted Burket at his residence, he confessed to his role in the burglary and
provided a written statement implicating appellant.

 Article 38.14 provides that a defendant cannot be convicted upon the testimony of
an accomplice unless the testimony is corroborated by other evidence tending to connect
the defendant with the offense committed. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon
2005). The corroboration is insufficient if it merely shows the commission of the offense. 
Id. In conducting a sufficiency review under the accomplice witness rule, we eliminate the
accomplice testimony from consideration and examine the record for any other evidence
that tends to connect the defendant to the commission of the offense. Solomon v. State,
49 S.W.3d 356, 361 (Tex.Crim.App. 2001). This evidence does not have to directly link the
defendant to the commission of the offense or establish his guilt beyond a reasonable
doubt. McDuff v. State, 939 S.W.2d 607, 613 ( Tex.Crim.App. 1997). There is no precise
rule as to the amount of evidence that is required, and each case is to be considered on
its own facts and circumstances. Gill v. State, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994);
Munoz v. State, 853 S.W.2d 558, 559 (Tex.Crim.App. 1993). See also Dowthitt v. State,
931 S.W.2d 244, 249 (Tex.Crim.App. 1996) (stating standard). 

 By his sole issue, appellant contends the only evidence presented at his trial tending
to connect him to the burglary, other than Burket's testimony, was the presence of the bank
bag in the back seat of the pickup. Citing Nelson v. State, 542 S.W.2d 175 (Tex.Crim.App.
1976), appellant contends this evidence, without more, is insufficient to corroborate
Burket's testimony that he committed the offense. In Nelson, two officers observed a
missing medallion lying on the grass three to five feet from the defendant and seven to
eight feet from the accomplice. Nelson, 542 S.W.2d at 176. The officers neither observed
the defendant with the medallion nor saw him throw it down. Id. The court noted that,
while the mere presence of the accused in the company of the accomplice before, during,
or after the commission of the offense is insufficient by itself to corroborate the
accomplice's testimony, such presence, coupled with other suspicious circumstances, may
tend to connect the accused to the offense. Id. at 177. The court then reversed the
defendant's conviction after concluding that the record was "devoid of any additional
evidence of an inculpatory nature tending to connect the accused with the commission of
the offense . . . such as being in the company of the accomplice near the scene of the
crime at the time of its commission at an unusual hour. . . ." Nelson, 542 S.W.2d at 177. 

 In the case at hand, the record reflects the very evidence the court found lacking in
Nelson. Deputy Padula stopped Burket and appellant near the intersection of FM 306 and
FM 2673, as they were driving toward New Braunfels. Padula's testimony indicates that
intersection lies four to five miles from the recreation center and several miles outside New
Braunfels. Evidence showed the burglary occurred sometime after nine p.m. Eliminating
Burket's testimony, evidence places appellant as the only passenger with Burket when he
was stopped a short distance from the recreation center at two-thirty in the morning, with
a bank bag closely matching the description of the stolen property. Deputy Padula testified
the circumstances were unusual:

 2:00 o'clock in the morning, 2:30 in the morning, two young kids driving down
the road with a bank bag in the back[seat] of a pickup truck. I've been in law
enforcement for almost ten years. It was the first time I've ever seen it. It
stuck out in my mind.

 Appellant also cites Bagwell v. State, 956 S.W.2d 709 (Tex.App.-San Antonio 1997,
no pet.), in which the court, citing Nelson, stated that the presence of a bank bag found in
the closet of a room the defendant had occupied did not provide sufficient corroborating
evidence tending to connect him with the charged crime. 956 S.W.2d at 712. In Bagwell,
though, the bank bag was described by witnesses simply as "similar" to those used by the
place of business where the crime occurred. Id. at 711. Here, Deputy Padula's testimony,
coupled with that of recreation center employees, strongly connects the bank bag Padula
saw in Burket's vehicle with that taken in the burglary. He noted the name of the bank (2)
printed on the bag as well as the taped Post-it note reading "Front door" that the center
manager said was on the missing bag.

 Appellant further relies on Rios v. State, 982 S.W.2d 558 (Tex.App.-San Antonio
1998, pet. ref'd.), a marihuana possession case in which the defendant's conviction was
reversed because the court determined that the only evidence connecting him with the
offense, other than the accomplice's testimony, was the fact he was present in the vehicle,
in the trunk of which the marihuana was found. The nature of a possession case makes
Rios largely inapposite here. (3) In addition, however, more is present here than in Rios. It
is not simply appellant's presence in the vehicle with Burket and the bank bag that tends
to connect him with the burglary of the recreation center. Appellant's presence with Burket
and the bank bag, traveling toward New Braunfels (4) near (but away from) the recreation
center on the night of the burglary tend to connect him with the crime. See Rios, 982
S.W.2d at 560, quoting Cox v. State, 830 S.W.2d 609, 611 (Tex.Crim.App. 1992) ("proof
that an accused was at or near the place where the crime occurred at or about the time that
it happened, along with evidence of other circumstances can be sufficient corroboration to
support a conviction"). Here, the other circumstances include appellant's presence with
Burket and the bank bag.

 We find that, under the appropriate standard of review, see Solomon, 49 S.W.3d at
361, there was sufficient evidence to corroborate the accomplice testimony presented at
appellant's trial. Accordingly, appellant's issue is overruled, and the trial court's judgment
is affirmed.



 James T. Campbell

 Justice





 

Do not publish.
1. The record indicates Burket then was eighteen and appellant was twenty. 
2. Testimony also noted the bank had ceased doing business in that name several
years earlier.
3. In a marihuana possession case, the presence of the marihuana is not simply
evidence tending to connect a suspect with the crime, it is the crime.
4. Deputy Padula's testimony established that Burket and appellant each lived at New
Braunfels addresses.