NO. 07-05-0054-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 11, 2006
_____

ANDY JOE SMITH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 22ND DISTRICT COURT OF COMAL COUNTY;

NO. CR2004-035; HONORABLE CHARLES RAMSAY, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty at his bench trial, appellant Andy Joe Smith was convicted of burglary of a building and sentenced to one year of confinement. By a single issue, he contends his conviction should be reversed because the State's accomplice testimony was not sufficiently corroborated by other evidence tending to connect him to the offense as required by Article 38.14 of the Code of Criminal Procedure. We affirm.

After being implicated by an accomplice, appellant was charged with unlawfully entering Canyon Lake Recreation Center and committing theft. The accomplice, Ryan Burket, testified that on October 16, 2003, appellant came up with the idea to "rob" the recreation center. That night, following appellant's directions, Burket drove him to the area in Burket's father's pickup. The men climbed a fence and approached the building from the rear. Burket observed appellant throw a rock through a back window and enter the building. Although appellant offered to give Burket half the money if he came inside, Burket testified he was too scared to enter the building and stood by the window as a lookout. After approximately forty-five minutes, he saw appellant exit the building carrying a plastic bag and what he later identified as a blue bank bag. The men returned to the pickup where appellant took cash out of the bank bag and put it in his wallet. The men then drove back to New Braunfels, where both lived.

Comal County Sheriff's Deputy David Padula testified that in the early morning hours of October 17, 2003, he was parked at a convenience store several miles down the road from the recreation center when he observed a pickup traveling toward New Braunfels with a defective tail light. He initiated a traffic stop and identified the occupants as Burket and appellant. When he inquired what they were doing out so late, Burket told the deputy they had been at a friend's house.[1] During the exchange, the deputy observed a blue bank bag sitting on the back seat of the pickup which he thought "seemed out of place." He returned

---

[1] The record indicates Burket then was eighteen and appellant was twenty.

2

to his patrol vehicle to report their information to dispatch. While sitting in his vehicle, he observed the two men talking and looking around the interior of the pickup. He subsequently issued Burket a warning citation for the broken tail light and obtained his consent to search the pickup. Upon closer inspection, Deputy Padula observed that the blue bank bag was inscribed with the name of the bank and had a Post-It note with the words "Front door" taped to its exterior. Burket explained that the truck belonged to his father and that he was not sure where the bag came from. Unaware that the recreation center had been burglarized, Deputy Padula released the men.

Later that morning, employees at the recreation center reported the burglary and theft of approximately $170 in cash. An investigation revealed that the stolen cash was kept in several blue bank bags and that the bag labeled "Front door" was missing. The scene was processed for fingerprints, but no usable prints were found. Deputy Padula learned of the burglary that evening and related to his superiors how he had observed a similar bank bag during a traffic stop. A call to a recreation center employee confirmed that the bag in the backseat of the pickup fit the description of the bag reported stolen. When a deputy confronted Burket at his residence, he confessed to his role in the burglary and provided a written statement implicating appellant.

Article 38.14 provides that a defendant cannot be convicted upon the testimony of an accomplice unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon

2005). The corroboration is insufficient if it merely shows the commission of the offense. *Id.* In conducting a sufficiency review under the accomplice witness rule, we eliminate the accomplice testimony from consideration and examine the record for any other evidence that tends to connect the defendant to the commission of the offense. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001). This evidence does not have to directly link the defendant to the commission of the offense or establish his guilt beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 613 ( Tex.Crim.App. 1997). There is no precise rule as to the amount of evidence that is required, and each case is to be considered on its own facts and circumstances. *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994); *Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim.App. 1993). *See also Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex.Crim.App. 1996) (stating standard).

By his sole issue, appellant contends the only evidence presented at his trial tending to connect him to the burglary, other than Burket's testimony, was the presence of the bank bag in the back seat of the pickup. Citing *Nelson v. State*, 542 S.W.2d 175 (Tex.Crim.App. 1976), appellant contends this evidence, without more, is insufficient to corroborate Burket's testimony that he committed the offense. In *Nelson*, two officers observed a missing medallion lying on the grass three to five feet from the defendant and seven to eight feet from the accomplice. *Nelson*, 542 S.W.2d at 176. The officers neither observed the defendant with the medallion nor saw him throw it down. *Id.* The court noted that, while the mere presence of the accused in the company of the accomplice before, during, or after the commission of the offense is insufficient by itself to corroborate the

4

accomplice's testimony, such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. *Id.* at 177. The court then reversed the defendant's conviction after concluding that the record was "devoid of any additional evidence of an inculpatory nature tending to connect the accused with the commission of the offense . . . such as being in the company of the accomplice near the scene of the crime at the time of its commission at an unusual hour. . . ." *Nelson*, 542 S.W.2d at 177.

In the case at hand, the record reflects the very evidence the court found lacking in *Nelson*. Deputy Padula stopped Burket and appellant near the intersection of FM 306 and FM 2673, as they were driving toward New Braunfels. Padula's testimony indicates that intersection lies four to five miles from the recreation center and several miles outside New Braunfels. Evidence showed the burglary occurred sometime after nine p.m. Eliminating Burket's testimony, evidence places appellant as the only passenger with Burket when he was stopped a short distance from the recreation center at two-thirty in the morning, with a bank bag closely matching the description of the stolen property. Deputy Padula testified the circumstances were unusual:

> 2:00 o'clock in the morning, 2:30 in the morning, two young kids driving down the road with a bank bag in the back[seat] of a pickup truck. I've been in law enforcement for almost ten years. It was the first time I've ever seen it. It stuck out in my mind.

Appellant also cites *Bagwell v. State*, 956 S.W.2d 709 (Tex.App.–San Antonio 1997, no pet.), in which the court, citing *Nelson*, stated that the presence of a bank bag found in

5

the closet of a room the defendant had occupied did not provide sufficient corroborating evidence tending to connect him with the charged crime. 956 S.W.2d at 712. In *Bagwell*, though, the bank bag was described by witnesses simply as "similar" to those used by the place of business where the crime occurred. *Id*. at 711. Here, Deputy Padula's testimony, coupled with that of recreation center employees, strongly connects the bank bag Padula saw in Burket's vehicle with that taken in the burglary. He noted the name of the bank[2] printed on the bag as well as the taped Post-it note reading "Front door" that the center manager said was on the missing bag.

Appellant further relies on *Rios v. State*, 982 S.W.2d 558 (Tex.App.–San Antonio 1998, pet. ref'd.), a marihuana possession case in which the defendant's conviction was reversed because the court determined that the only evidence connecting him with the offense, other than the accomplice's testimony, was the fact he was present in the vehicle, in the trunk of which the marihuana was found. The nature of a possession case makes *Rios* largely inapposite here.[3] In addition, however, more is present here than in *Rios*. It is not simply appellant's presence in the vehicle with Burket and the bank bag that tends to connect him with the burglary of the recreation center. Appellant's presence with Burket

---

[2] Testimony also noted the bank had ceased doing business in that name several years earlier.

[3] In a marihuana possession case, the presence of the marihuana is not simply evidence tending to connect a suspect with the crime, it is the crime.

and the bank bag, traveling toward New Braunfels[4] near (but away from) the recreation center on the night of the burglary tend to connect him with the crime. *See Rios*, 982 S.W.2d at 560, quoting *Cox v. State*, 830 S.W.2d 609, 611 (Tex.Crim.App. 1992) ("proof that an accused was at or near the place where the crime occurred at or about the time that it happened, along with evidence of other circumstances can be sufficient corroboration to support a conviction"). Here, the other circumstances include appellant's presence with Burket and the bank bag.

We find that, under the appropriate standard of review, *see Solomon*, 49 S.W.3d at 361, there was sufficient evidence to corroborate the accomplice testimony presented at appellant's trial. Accordingly, appellant's issue is overruled, and the trial court's judgment is affirmed.

James T. Campbell
Justice

Do not publish.

---

[4] Deputy Padula's testimony established that Burket and appellant each lived at New Braunfels addresses.